IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LA DONNA D. HILL,

    Plaintiff,　　　　　　　　　　　No. CIV S-07-0203 GEB EFB

    vs.

MICHAEL J. ASTRUE,　　　　　　　FINDINGS AND RECOMMENDATIONS
Commissioner of Social Security,

    Defendant.
_____/

    Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act ("Act"). For the reasons that follow, the court recommends that plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion for summary judgment be granted.

**I. BACKGROUND**

    Plaintiff, born November 20, 1960, applied for disability benefits on February 20, 2004, alleging disability since August 28, 2003, due to systemic lupus erythematosus ("SLE") and fibromyalgia. Administrative Record ("AR") 14, 75, 100. The application was denied initially and upon reconsideration. AR 19-20. On March 30, 2006, following a hearing before

////

Administrative Law Judge ("ALJ") Alberto E. Gonzalez, plaintiff was found not disabled.[1]  AR 14-18.

Specifically, the ALJ made the following findings:

> 1. Claimant met the disability insured status requirements of the Act on August 28, 2003, her alleged onset date, and continues to meet those requirements through September 30, 2009.
>
> 2. Claimant has not performed any SGA since August 28, 2003, her alleged onset date.
>
> 3. The medical evidence establishes that claimant has the severe impairments of fibromyalgia with chronic joint pain and hepatitis C with liver mass.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401, *et seq*.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382, *et seq*.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

|   |   |
|---|---|
| 4. | Claimant's severe impairments do not meet or equal any listed impairment in Appendix 1, Subpart P, Regulation No. 4. |
| 5. | Claimant has the following RFC: the ability to lift and carry up to 10 pounds occasionally, sit up to five hours during an eight-hour workday, stand/walk up to three hours during an eight-hour workday, perform occasional simple bilateral grasping, feeling and pushing/pulling, perform frequent bilateral fine manipulation, reaching and handling, occasional use [*sic*] the feet for pushing/pulling activities and occasionally balance and stoop with preclusion from climbing, crouching, kneeling, crawling and working on heights and the need to avoid even moderate exposure to moving machinery, chemicals, dust, temperature extremes, fumes and vibration. |
| 6. | Claimant's subjective complaints, as discussed above, are only credible to the extent that they are consistent with the above RFC. |
| 7. | Claimant is unable to perform past relevant work. |
| 8. | Claimant is a 45-year-old individual with a GED and one year of college education and past relevant work as a warehouse laborer, cashier, sales route driver and bus driver. |
| 9. | Considering claimant's RFC, vocational factors and the expert opinion, as explained above there are jobs existing in significant numbers within the national economy that she can perform. Cited jobs include accounts clerk, credit checker/authorizer and mail machine operator (except postal worker). |
| 10. | Pursuant to 20 C.F.R. § 404.1520(f), claimant is not and has not been under a "disability" as that term is defined in the Social Security Act, as amended, since August 28, 2003. |

AR 22.

On November 27, 2006, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AR 4-6.

## II. ISSUES PRESENTED

In her motion for summary judgment, plaintiff alleges two errors in the Commissioner's decision. First, she alleges that the ALJ erred at step five of the sequential evaluation by

3

improperly relying on vocational expert testimony that did not accurately reflect information contained in the Dictionary of Occupational Titles. Second, she argues that the ALJ improperly failed to credit all of the functional limitations opined by one of her treating physicians.

### III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### IV. ANALYSIS

A. <u>Vocational Expert Testimony</u>

Steps four and five of the analysis require a determination of the plaintiff's residual capacity to perform work functions of her past work (step four) and, if unable to do so, other work (step five). "If a claimant shows that she cannot return to her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." *Embrey v.*

*Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (citing *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1278 (9th Cir. 1987)). "Without other reliable evidence of a claimant's ability to perform specific jobs, the Secretary must use a vocational expert to meet that burden." *Id.* If there are jobs in the national economy that the claimant can perform, then she is not disabled for purposes of the Social Security Act. *See Bowen*, 482 U.S. at 140; 20 C.F.R. § 404.1520(f).

Here, the ALJ relied on the testimony of a vocational expert at step five, and determined that there were other jobs in the national economy that plaintiff could perform. While some of the expert's testimony was a bit muddled, and though he mischaracterized certain jobs, his testimony regarding the job of "new account clerk," DOT code number 205.367-014, was sufficient to sustain the ALJ's findings. *See* The United States Dept. of Labor, Employment and Training Admin., Dictionary of Occupational Titles (4th ed. 1991) ("DOT"), 205.367-014 ("charge-account clerk," or "credit-card interviewer; new-account interviewer").[2] Although the vocational expert incorrectly referred to the position as a "new account clerk," his testimony matched the description of the job in the DOT. AR 307-08.

The DOT describes this position as interviewing applicants for charge accounts, reviewing application, and checking references. It lists the job as sedentary, with a specific vocational preparation ("SVP") of two.[3] The job requires exerting up to ten pounds of force occasionally, and sitting most of the time with some walking or standing. It also involves handling, and reaching, with occasional fingering, but no climbing, balancing, stooping, kneeling, crouching, crawling, or exposure to environmental conditions. *See* DOT, 205.367-014; *see also* The United States Dept. of Labor, Employment and Training Admin., Selected

---

[2] The DOT is a primary source of reliable job information for the Commissioner. 20 C.F.R. § 404.1566(d)(1).

[3] The SVP is "the amount of lapsed time required by a typical work to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* DOT, at 1009. An SVP of two indicates "anything beyond short demonstration up to and including 1 month." *Id.*

5

Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, 335 (1993).

The expert's testimony reflected these specifications. The expert testified that the job was sedentary and would accommodate a sit/stand option. AR 307. He testified that it had an SVP of two, and would basically consist of interviewing people and opening new accounts over the phone or in person. AR 307-08. He further testified that this job would accommodate a person lifting up to ten pounds occasionally, and may require simple grasping. AR 307. He testified that there were 98,000 such jobs in the national economy and 5,000 in California. *Id.*

Importantly, the expert's testimony that a person with plaintiff's residual functional capacity ("RFC") could do this job is supported by the record. The ALJ found that plaintiff had the RFC "to lift and carry up to 10 pounds occasionally, sit up to five hours during an eight-hour workday, stand/walk up to three hours during an eight-hour workday, [and] perform occasional simple bilateral grasping, . . . [and] frequent bilateral fine manipulation, reaching and handling." AR 17-18. He also found that plaintiff could occasionally balance and stoop, but could not climb, crouch, kneel, crawl or work around heights. AR 17-18. Further, he found that she should avoid "exposure to moving machinery, chemicals, dust, temperature extremes, fumes and vibration." AR 18.

This characterization of plaintiff's RFC accords with the requirements of the "charge-account clerk" position. The expert's incorrect reference to the title of the job was harmless error, as was his mischaracterization of other jobs and their DOT specifications.[4] *See Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases). Because the expert accurately described the position of charge-

---

[4] The expert's testimony regarding the jobs of "credit checker/credit authorizer" and "mail machine operator except postal" did not accurately reflect the DOT's specifications. *Compare* AR 307-08, *with* DOT, 205.367-022 (SVP 4) and 209.587-010 ("addresser"). The Commissioner does not take the position that the testimony regarding these jobs was properly relied upon by the ALJ. *See* Def.'s Brf., at 6:27-28. However, as discussed above, any reliance by the ALJ on testimony concerning these jobs was harmless error.

6

account clerk, which exists in significant numbers in the national economy, and because that job is within the bounds of plaintiff's residual functional capacity, the ALJ's finding at step five is supported by substantial evidence and should not be disturbed.

### B. Evaluation of Medical Opinions

Plaintiff also asserts that the ALJ erred by failing to adopt all of the limitations opined by one of her treating physicians, Dr. Laura Wise, M.D.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.*, at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Here, in assessing plaintiff's RFC, the ALJ accorded "considerable weight" to the opinion of plaintiff's treating physician, Dr. Theresa Rudlowski, M.D. AR 15. Dr. Rudlowski began treating plaintiff in January 2005 in connection with her fibromyalgia, joint pain, hepatitis, and liver mass. AR 260. In August 2005, Dr. Rudlowski opined that plaintiff could occasionally lift up to twenty pounds, carry up to ten pounds, sit for one hour without interruption, and sit for

four to five hours total in an eight-hour workday. AR 261-62. She further opined that plaintiff could stand and walk for three hours in an eight-hour workday, and could perform occasional grasping and frequent fine manipulation. She further opined that plaintiff could balance, stoop, push/pull and "feel" occasionally, reach and handle frequently, but could never crouch, kneel, or crawl. AR 263.

The ALJ accepted all of these (and other environmental) limitations opined by Dr. Rudlowski, with two exceptions: he did not accept (1) that plaintiff was precluded from work involving hearing and speaking; or, (2) that plaintiff should avoid even moderate exposure to workplace noise and humidity. AR 15. The ALJ's "exceptions" in this regard were well-founded, as plaintiff testified at the hearing that she had no limitations in these areas. *See* AR 15, 291-92. The ALJ explained this in his written decision, and commented that Dr. Rudlowski's indications in this regard may have merely been a "form completion error." AR 15. He further noted that Dr. Rudlowski's opinion was "generally consistent" with the August 2004 opinion of plaintiff's other treating physician, Dr. Wise. AR 15.

Dr. Wise completed an assessment of plaintiff's functional limitations on August 19, 2004. AR 228-30. On the form, Dr. Wise specifically noted that the rheumatologist declined to complete the form and that she herself was "not an expert in this exam." AR 228. Dr. Wise opined that plaintiff could sit for five to six hours in an eight-hour work day, and could stand or walk for thirty minutes to an hour. AR. 229. She also opined that plaintiff had to lie down or elevate her legs for three hours during an eight-hour workday. AR 229. She wrote that plaintiff could lift five to ten pounds frequently, and had an unlimited ability to reach, but had some limitations in handling, feeling, pushing, pulling and grasping. AR 230.

As noted by the ALJ, Dr. Wise's assessment was largely consistent with the opinion of Dr. Rudlowski. Indeed, plaintiff does not challenge the ALJ's overall treatment of Dr. Wise's opinion. Rather, she only challenges the ALJ's decision not to credit the portion of the opinion regarding plaintiff's purported need to lie down (or elevate her legs) for about three hours during

8

the work day.

The ALJ is entitled to resolve any conflict between differing medical opinions. *See Andrews*, 53 F.3d at 1041. Here, the ALJ considered both opinions, and determined that they were "generally consistent." AR 15. Dr. Wise, like Dr. Rudlowski, opined that plaintiff had the ability to perform a range of sedentary work with some postural and manipulative limitations. AR 15. In resolving what little conflict there was between the two opinions, the ALJ relied, in large part, on plaintiff's own testimony. AR 15-16. In particular, the ALJ found that plaintiff's activities of daily living – including "rising early, driving 60 miles twice a day, attending five hours of classes and working at a computer for extended periods of time – indicated a high degree of functional capability. He also found plaintiff's unsuccessful return to work in November and December in 2004 – during which time she worked twelve-hour days, seven days per week – as indicative of her functional capacity. AR 16, 279-84.

These were cogent and legitimate reasons for resolving what little ambiguity existed between the opinions of Drs. Rudlowski and Wise. It is "solely the province of the ALJ" to resolve any such ambiguities. *See Andrews*, 53 F.3d at 1041. Accordingly, the court finds that the ALJ applied the proper standards in weighing the medical evidence and that his determination of plaintiff's RFC was supported by substantial evidence in the record (i.e., Dr. Rudlowski's opinion).

**V. CONCLUSION**

In conclusion, the court finds that the ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards. Therefore, IT IS RECOMMENDED that:

1. Plaintiff's motion for summary judgment be denied;

2. The Commissioner's cross-motion for summary judgment be granted; and,

////

////

3. The Clerk be directed to enter judgment in the Commissioner's favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: August 7, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE